## Case No. 4,827.

FISK v. UNION PAC. R. CO. et al.

[6 Blatchf. 362.] [1]

Circuit Court, S. D. New York. April 6, 1869.

Edwin W. Stoughton and David Dudley Field, for plaintiff.

Samuel J. Tilden, Charles Tracy, and Clarence A. Seward, for defendants.

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

BLATCHFORD, District Judge. This suit was originally instituted in the supreme court of the state of New York, by the plaintiff, Fisk, against the Union Pacific Railroad Company, a corporation organized under a law of the United States, and not a banking corporation, and twenty-three other defendants. It is alleged that four other defendants have since been brought in, by proceedings in the state court. The motion now made is founded on the idea that the suit is one now pending in this court, in which the plaintiff who commenced the suit in the state court is plaintiff, and all the defendants who have been made defendants in it, in the state court, are defendants. The suit was not commenced in this court by the service of process of any kind; but jurisdiction over it, if acquired at all by this court, has been acquired by a process of removal, exercised under an act of congress, passed on the 27th of July, 1868 (15 Stat. 226, 227). So far as I am aware, this is the first case which has been brought up in any court of the United States, or in any state court, under this statute. In some respects, this statute differs from all other statutes on the subject of the removal of cases into the courts of the United States, and in some respects it is similar to them.

The first question that arises for consideration upon the motion is, whether this case is in this court—whether this court has jurisdiction of the case. This question necessarily arises, and must be decided at the outset; because, if this court has no jurisdiction of the case, it has no power to entertain the motion that is made, no power to make any order either granting or denying the motion, and no power to make any order whatever in the case, except to dismiss it for want of jurisdiction. Mayor v. Cooper, 6 Wall. [73 U. S.] 247, 250. The order that is now asked for is not an order outside of the case, but an order in the case. I proceed, therefore, to consider whether this court has jurisdiction of the case. The question of jurisdiction was argued very fully, on the motion, by the counsel for the respective parties. The grounds urged by the counsel for the plaintiff, against the jurisdiction of the court, were: (1) That the whole suit is not in this court; (2) that no part of the suit is in this court; (3) that, under the act of 1868, a suit cannot be removed into this court, except on the petition of all of the defendants in it; (4) that the suit, to be removable, under the act of 1868, must be brought for a liability of the Union Pacific Railroad Company, and also for a liability of all the other defendants, as members of such company; (5) that the petition for removal presented to the state court was not properly verified by oath, by any defendant; (6) that the suit was not brought in the state court for any liability, or alleged liability, of said company.

As was well observed by one of the counsel for the defendants, the cases of removal of suits from the state courts to the courts of the United States, provided for by acts of congress since the institution of the government, arrange themselves naturally, and according to the provisions of the statutes, into two classes. One class is, where the right of removal is given by reason of the condition of citizenship or alienage in a party; and the other class is, where the right is conferred by reason of a subject-matter involved in the suit. The 12th section of the judiciary act of September 24, 1789 (1 Stat. 79), and the act of July 27, 1866 (14 Stat. 306), and the act of March 2, 1867 (Id. 558), are statutes where the right of removal is made to depend upon citizenship or alienage. The act of March 2, 1833 (4 Stat. 632, 633), for the removal of suits or prosecutions brought on account of acts done, or authority claimed, under the revenue laws of the United States, and the act of March 3, 1863 (12 Stat. 755, 756), passed during the late Rebellion, for the removal of suits or prosecutions for acts done, or omitted to be done, during the Rebellion, by virtue of authority derived from the president of the United States, or any act of congress, and the act now in question, passed July 27, 1868, are statutes where the right of removal is made to depend upon subject-matter. The authority conferred upon congress to pass such statutes as these three of 1833, 1863, and 1868, for the removal of causes where the jurisdiction depends upon the subject-matter, is conferred by the second section of the third article of the constitution of the United States, which provides, that the judicial power of the United States "shall extend to all cases in law and equity arising under this constitution, the laws of the United States. and treaties made, or which shall be made, under their authority." That provision has been expounded by the supreme court of the United States, in some memorable cases, and rests upon a solid and secure foundation, with well-defined and well-understood boundaries, making it perfectly clear and distinct how far the authority of congress to confer this jurisdiction upon the proper courts of the United States extends. In view of those decisions, there can be no doubt whatever, that it was within the constitutional power of congress to pass this act of the 27th of July, 1868. It in no respect differs, in principle or character, in its scope, object and purpose, or in the basis on which it rests, from the act of 1833 and the act of 1863 (Mayor v. Cooper, 6 Wall. [73 U. S.] 247, 254); and, for the purpose of expressing distinctly the views that this court entertains on this subject, I shall proceed to state those views at some considerable length.

The case which settles the principle to which I have referred, authoritatively and distinctly, is the case of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738. In that case, the act of congress, incorporating the bank of the United States, conferred upon it the

capacity to sue in any circuit court of the United States; and the question arose for decision, whether the clause which authorized the bank to sue in the federal courts was constitutional, under the provision of the constitution to which I have referred. The bank had come into the federal court in Ohio, by virtue of that clause in its act of incorporation, and brought a suit in equity against certain individuals, praying relief. The relief was granted, and the defendants appealed to the supreme court. The opinion of that court was delivered by Chief Justice Marshall. The question, as stated by him (page 819), was whether the suit was a case arising under a law of the United States. The objection made against the jurisdiction of the federal court was, that several questions might arise in the case which depended on the general principles of law, and not on any act of congress. In regard to this, the chief justice says: "If this were sufficient to withdraw a case from the jurisdiction of the federal courts, almost every case, although involving the construction of a law, would be withdrawn, and a clause in the constitution, relating to a subject of vital importance to the government, and expressed in the most comprehensive terms, would be construed to mean almost nothing. There is scarcely any case every part of which depends on the constitution, laws, or treaties of the United States. The questions, whether the fact alleged as the foundation of the action be real or fictitious; whether the conduct of the plaintiff has been such as to entitle him to maintain his action; whether his right is barred; whether he has received satisfaction, or has in any way released his claims, are questions some or all of which may occur in almost every case; and, if their existence be sufficient to arrest the jurisdiction of the court, words which seem intended to be as extensive as the constitution, laws, and treaties of the Union, which seem designed to give the courts of the government the construction of all its acts, so far as they affect the rights of individuals, would be reduced to almost nothing." He also says (page 821): "We perceive, then, no ground on which the proposition can be maintained, that congress is incapable of giving the circuit courts original jurisdiction in any case to which the appellate jurisdiction extends." And here I may remark, that whether this power of removing cases from the state courts into the courts of the United States is to be referred to appellate jurisdiction or to original jurisdiction, is of no consequence whatever, on this branch of the case. Such power of removal has sometimes been referred (Martin v. Hunter's Lessee, 1 Wheat. [14 U. S.] 304, 349, 350) to the appellate jurisdiction, on the ground that, as the suit is not instituted in the federal court by original process, the jurisdiction of that court must be appellate, because it cannot be original. In a case, however, in this court, before Mr. Justice Nelson, decided in July, 1866, of a removal under the act of 1833,—the case of Dennistoun v. Draper [Case No. 3,804]—he speaks of the jurisdiction of this court over a case removed into it from the state court, as "original jurisdiction, acquired indirectly by a removal from the state court." But the name given to the jurisdiction, whether it be called original, or quasi original by way of removal, or whether it be called appellate, is of no consequence. That the jurisdiction exists, to be exercised by way of removal of the case to the federal court, there can be no doubt. The chief justice proceeds (page 821): "We ask, then, if it can be sufficient to exclude this jurisdiction, that the case involves questions depending on general principles? A cause may depend on several questions of fact and law. Some of these may depend on the construction of a law of the United States, others on principles unconnected with that law." He also says (page 822): "The judicial power of the Union extends effectively and beneficially to that most important class of cases, which depends on the character of the cause. On the opposite construction, the judicial power never can be extended to a whole case, as expressed by the constitution, but to those parts of cases, only, which present the particular question involving the construction of the constitution or the law. We say, it never can be extended to the whole case, because, if the circumstance that other points are involved in it shall disable congress from authorizing the courts of the Union to take jurisdiction of the original cause, it equally disables congress from authorizing those courts to take jurisdiction of the whole cause, on an appeal, and thus will be restricted to a single question in that cause, and words obviously intended to secure to those who claim rights under the constitution, laws, or treaties of the United States, a trial in the federal courts, will be restricted to the insecure remedy of an appeal upon an insulated point, after it has received that shape which may be given to it by another tribunal, into which he is forced against his will." This view applies equally to a jurisdiction acquired by removal, because the jurisdiction intended by the constitution, and, as I think, purposely carried out by congress, in the acts of 1833, 1863, and 1868, is a jurisdiction not restricted to the single question which arises under the constitution, laws, or treaties of the United States, but is a jurisdiction under which the cause is transferred to a court of the United States where such question exists as an ingredient in the cause. The chief justice proceeds, (page 823): "We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it." This view is confirmed by the

opinion of the supreme court, in the case of Mayor v. Cooper, 6 Wall. [73 U. S.] 247, 252. A jurisdiction of that character and extent can, as a matter of course, be given as well by the process of removal as by the original institution of the suit in the federal court, or as by an appeal or a writ of error. Mayor v. Cooper, ut supra. If this were not so, it is perfectly obvious that a plaintiff would always have it in his power, by introducing into his suit, as causes of action, questions of fact or law that did not of themselves arise under the constitution or laws of the United States, and by coupling them with other causes of action arising under the constitution or laws, to deprive the courts of the United States of all jurisdiction of the suit. That result would ensue, if the jurisdiction be restricted to the question which arises under the constitution or laws, unless the incongruity were admitted, or transferring a part of a cause into one court, and leaving the rest of it in another court.

. The chief justice then proceeds to say—and I cite these observations of his, because they are quite applicable to the present cause, in many of its aspects: "The case of the bank is, we think, a very strong case of this description. The charter of incorporation not only creates it, but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is a law of the United States. This being can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States. It is not only itself the mere creature of a law, but all its actions, and all its rights, are dependent on the same law. Can a being, thus constituted, have a case which does not arise literally, as well as substantially, under the law?" He then proceeds to argue that proposition and demonstrate it very fully. The conclusion arrived at was, that the clause in the act incorporating the bank, enabling it to sue in the courts of the United States, was consistent with the constitution, and was to be obeyed in all courts.

The conclusion at which the supreme court arrived in that case, was cited and applied in this court, by Mr. Justice Nelson, in the case of Murray v. Patrie [Case No. 9,967], decided in July, 1866. In his opinion in that case he says: "The question of the removal of causes from the state courts to the circuit courts of the United States, was discussed very much in Martin v. Hunter's Lessee, 1 Wheat. [14 U. S.] 346-350, and no doubt was entertained that it might take place after as well as before judgment. It was again commented upon in the case of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 821-828, and especially by Mr. Justice Johnson, in his dissenting opinion (pages 884-889). Mr. Justice Johnson was inclined to the con-

clusion, that congress could not confer original jurisdiction upon the circuit courts of the United States, either directly, or by removal from state courts, in cases arising under the constitution, the laws of the United States, and treaties, &c., inasmuch as the federal court must assume the jurisdiction upon the simple hypothesis that such question had arisen, and that, until such question had actually arisen, and was presented for decision, the case was exclusively cognizable in the state court. This view led the learned justice to maintain, that the question could be brought properly before the federal court, only under the 25th section of the judiciary act, as it could not be ascertained whether the case had actually arisen, till it was heard and decided. The chief justice, who delivered the opinion of the court, held, that jurisdiction could be entertained, when the question assumed such a form that the judicial power was capable of acting on it; that it then became a case; and that the judicial power extended to all cases arising under the constitution, &c." I cite these remarks, to show the view entertained by Mr. Justice Nelson, as to the proper construction of the decision in the case of Osborn v. Bank of U. S. [supra], and as to the constitutionality of the exercise of the power of removal, and as to the circumstances under which a case arises, so as to be capable of removal.

The same principle was held by Mr. Justice Washington, in the case of Bank of U. S. v. Northumberland Bank [Case No. 931], in which a suit was brought by the Bank of the United States, a corporation created by a law of the United States, under the power, conferred by its charter, to bring a suit in the circuit court of the United States. Mr. Justice Washington held, that the power to bring the suit existed. He uses this language: "That this is a case arising under a law or laws of the United States, is unquestionable. It never could have arisen, if the legislature, in the exercise of its constitutional authority, had not incorporated the Bank of the United States." This view, taken by him in 1821, is the same view which was taken by the supreme court, in the case of Osborn v. Bank of U. S., supra.

I have referred to the three statutes of 1833, 1863, and 1868, as being statutes very much in pari materia upon the subject of removing causes from the state courts, where the jurisdiction depends on the subject-matter, and arises under the clause of the constitution which I have cited. A more particular reference to these statutes will be useful. The third section of the act of March 2, 1833, was, as is well known, passed in consequence of the attitude of nullification assumed by the state of South Carolina at that time. It was passed during the administration of President Jackson. There is one feature about the third section of this act, in which it differs from all the other acts, providing for the removal of causes, that have

ever been passed by congress. In all other acts, the party desiring the removal is sent, by express enactment of congress, to take the initiative for the purpose in the state court, by filing a petition in the state court and offering surety there, and, until he has done those acts in the state court, he has no right to enter this court. But, by this act of 1833, in consequence of the hostile attitude assumed by South Carolina, the action toward a removal is entirely confined to action in the federal court; and the act of congress addresses the state court solely by inhibition. It does not send the defendant to the state court to present any petition, or offer any surety, but it acts on the state court only by inhibition, and by a writ of certiorari, or a writ of habeas corpus cum causa, issued by the federal court. It provides that, "in any case where suit or prosecution shall be commenced in a court of any state, against any officer of the United States, or other person, for or on account of any act done under the revenue laws of the United States, or under color thereof, or for or on account of any right, authority, or title, set up or claimed by such officer, or other person, under any such law of the United States, it shall be lawful for the defendant in such suit or prosecution, at any time before trial, upon a petition to the circuit court of the United States in and for the district in which the defendant shall have been served with process, setting forth the nature of such suit or prosecution, and verifying the said petition by affidavit, together with a certificate signed by an attorney or counsellor at law of some court of record of the state in which such suit shall have been commenced, or of the United States, setting forth that, as counsel for the petitioner, he has examined the proceedings against him, and has carefully inquired into all the matters set forth in the petition, and that he believes the same to be true; which petition. affidavit and certificate shall be presented to the said circuit court, if in session, and if not, to the clerk thereof at his office, and shall be filed in said office, and the cause shall thereupon be entered on the docket of said court, and shall be thereafter proceeded in as a cause originally commenced in that court; and it shall be the duty of the clerk of said court, if the suit were commenced in the court below by summons, to issue a writ of certiorari to the state court, requiring said court to send to the said circuit court the record and proceedings in said cause; or, if it were commenced by capias, he shall issue a writ of habeas corpus cum causa, a duplicate of which said writ shall be delivered to the clerk of the state court, or left at his office by the marshal of the district, or his deputy, or some person duly authorized thereto; and, thereupon, it shall be the duty of the said state court to stay all further proceedings in such cause, and the said suit or prosecution, upon delivery of such process, or leaving the same, as aforesaid, shall be deemed and taken to be moved to the said circuit court, and any further proceedings, trial, or judgment therein, in the state court, shall be wholly null and void." It is thus put in the power of the federal court to acquire and maintain its jurisdiction completely and entirely by action within itself. The issuing of the writ of certiorari, requiring the state court to send to the circuit court the record and proceedings, seems to be merely a mode of notifying the state court; because, by the fourth section of the same act, provision is made for supplying to the federal court, by affidavit, the absence of certified copies from the state court of the record and proceedings therein. Abranches v. Schell [Case No. 21]. When the process is delivered to or left at the office of the clerk of the state court, the case is thereby ipso facto removed to the circuit court. No return to the writ is necessary; but, when the writ is thus served on the state court, it becomes the duty of the state court to stay all further proceedings in the cause, and any further proceedings therein, in the state court, becomes wholly null and void.

It is quite apparent, that the jurisdiction which congress intended to give, under this act of 1833, where a suit or prosecution is commenced against any officer of the United States, or other person, for or on account of any act done under the revenue laws of the United States, or under color thereof, or for or on account of any right. authority, or title set up or claimed by such officer, or other person, under any such law of the United States, is to be such a jurisdiction, that a plaintiff in a state court shall not be able to deprive such officer or other person, who is sued on account of an act done under the revenue laws, of the right to remove the suit into a court of the United States, under this statute, by joining with him in the same suit other defendants who are not sued on account of acts done under the revenue laws. Thus to deprive the federal court of jurisdiction of the case, would be to deprive the officer or person justifying under the revenue laws, of the power to have his rights adjudicated from the commencement by the federal court, and to compel him to follow the case through the state courts in all of its stages, and finally take it, under the 25th section of the judiciary act, to the supreme court of the United States. No such construction of this law has been admitted, so far as I am aware. The manifest intent of this statute, in saying that "it shall be the duty of the said state court to stay all further proceedings in such cause, and the said suit, or prosecution, upon delivery of such process, or leaving the same. as aforesaid, shall be deemed and taken to be moved to the said circuit court, and any further proceedings, trial, or judgment therein in the state court, shall be wholly null and void," is to remove the suit. The suit goes into the federal court, with all the parties to the suit. Every party to the suit

is brought into the federal court when the suit is brought there, and the court, in obtaining jurisdiction of the suit, obtains jurisdiction over all the parties to it. It is plain that this must be the construction of the act of 1833, or it would be mere waste paper. Otherwise, a plaintiff would have it in his power to deprive an officer of the United States, who justified his acts under the revenue laws, from ever removing the cause into the federal court, by joining with such officer, as a defendant, some other person, on other causes of action, no matter how incongruous or irrelevant.

The same principle applies to the act of March 3, 1863. The 5th section of that act provides: "If any suit or prosecution, civil or criminal, has been or shall be commenced in any state court, against any officer, civil or military, or against any other person, for any arrest or imprisonment made, or other trespasses or wrongs done or committed, or any act omitted to be done, at any time during the present Rebellion, by virtue or under color of any authority derived from, or exercised by, or under, the president of the United States, or any act of congress, and the defendant shall, at the time of entering his appearance in such court, or, if such appearance shall have been entered before the passage of this act, then at the next session of the court in which such suit or prosecution is pending, file a petition stating the facts, and verified by affidavit, for the removal of the cause for trial at the next circuit court of the United States to be holden in the district where the suit is pending, and offer good and sufficient surety for his filing in such court, on the first day of its session, copies of such process and other proceedings against him, and also for his appearing in such court and entering special bail in the cause, if special bail was originally required therein, it shall then be the duty of the state court to accept the surety and proceed no further in the cause or prosecution, and the bail that shall have been originally taken shall be discharged; and, such copies being filed, as aforesaid, in such court of the United States, the cause shall proceed therein in the same manner as if it had been brought in said court by original process." The section then provides for removing the case by appeal, after final judgment, during the session or term of the court at which judgment was rendered. It provides also for removing the case, within six months after judgment, by writ of error. That was what was done by the process which was issued in the case of Murray v. Patrie [supra], to which I have referred. That was a writ of error issued under this section, within six months after the judgment was rendered in the state court. The section then goes on to say: "and the said circuit court shall thereupon proceed to try and determine the facts and the law in such action." This act thus provides for removing the whole suit, no matter who the parties are, and no matter what relief is sought to be obtained in the suit, provided there is found in the suit, as an ingredient therein, a claim against an officer, or any other person, for any arrest or imprisonment made, or other trespasses or wrongs done or committed, or any act omitted to be done, at any time during the Rebellion, under color of any authority derived from, or exercised by, or under, the president of the United States, or any act of congress. If such ingredient is found in the suit, the whole suit goes into the federal court. If this were not so, then, as in the case of the act of 1833, a plaintiff could deprive a party of all remedy under this statute.

We come now to the act of 1868, under which the proceedings for removal in this suit were instituted. This is an act in which the jurisdiction is founded on subject-matter. The second section of the act provides, that "any corporation or any member thereof, other than a banking corporation, organized under a law of the United States, and against which a suit at law or in equity has been or may be commenced, in any court other than a circuit or district court of the United States, for any liability or alleged liability of such corporation, or any member thereof, as such member, may have such suit removed from the court in which it may be pending, to the proper circuit or district court of the United States, upon filing a petition therefor, verified by oath, either before or after issue joined, stating they have a defence arising under or by virtue of the constitution of the United States, or any treaty or law of the United States, and offering good and sufficient surety for entering in such court, on the first day of its session, copies of all process, pleadings, depositions, testimony, and other proceedings in said suit, and doing such other appropriate acts as are required to be done by the act entitled, 'An act for the removal of causes in certain cases from state courts,' approved July twenty-seventh, eighteen hundred and sixty-six; and it shall be thereupon the duty of the court to accept the surety, and proceed no further in the suit; and, the said copies being entered as aforesaid, in such court of the United States, the suit shall then proceed in the same manner as if brought there by original process." Under this act of 1868, as well as under the acts of 1833 and 1863, if the suit comes into this court at all, as to any person, it must come as an entirety. There can be nothing of it here, unless the whole of it is here; and, if any of it is here, there can be nothing of it left in the state court. This is necessary, and must have been intended by congress, in the act of 1868, because of the subject-matter, which is the foundation of the jurisdiction of this court, and because, otherwise, it would be in the power, as already suggested, of any plaintiff to deprive a corporation, organized under a law of the United States, which has a de-

fence arising under or by virtue of the constitution of the United States, or any treaty or law of the United States, of the power to remove the suit to this court, by simply joining with the claim for relief against such corporation, because of an alleged liability of such corporation, some other right of action against some other defendant in the suit.

The act of July 27, 1866, introduces a new principle, which did not exist under the act of September 24, 1789, in regard to the removal of suits in cases where the right of removal is given because of the condition of alienage or citizenship in a defendant. This act of 1866 provides for the removal, in certain cases, into the proper federal court, of a cause, as against an alien or defendant who is a citizen of a state other than that in which the suit is brought, who petitions for such removal; and it expressly enacts, that such removal, as against such petitioning defendant, shall not be deemed to prejudice or take away the right of the plaintiff to proceed at the same time with the suit in the state court, as against the other defendants, if he shall desire to do so. The power of removal under this act of 1866 is limited, however, to cases where the suit, so far as relates to the alien defendant, or to the defendant who is the citizen of a state other than that in which the suit is brought, is instituted for the purpose of restraining or enjoining him, or is one in which there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause. It is quite manifest, that the principle introduced by this act of 1866, of proceeding with the suit in the federal court as against the removing defendant, and proceeding at the same time with the suit in the state court as against the non-removing defendants, has no application to the acts of 1833, and 1863, and 1868. Under those acts, if any part of the suit remains in the state court, the whole of it remains there; and, if any part of it goes to the federal court, the whole of it goes there.

The question that now arises for consideration, is as to the proper construction of the second section of this act of 1868. That section provides, that any corporation, or any member thereof, other than a banking corporation, organized under a law of the United States, and against which a suit at law or in equity has been or may be commenced, in any court other than a circuit court or a district court of the United States, for any liability, or alleged liability, of such corporation, may have such suit removed from the court in which it may be pending, to the proper circuit court or district court of the United States, upon taking certain proceedings. Under this provision, and in analogy to the provisions of the acts of 1833 and 1863, it is only necessary that a suit, at law or in equity, shall be commenced in a court other than a circuit court or a district court of the United States,

against a corporation other than a banking corporation, organized under a law of the United States, for a liability, or alleged liability, of such corporation. That is all that is necessary, in the first place, to authorize the suit to be removed; and the proper construction of the provision is, that where such a suit is commenced, for such a liability, or alleged liability, if the corporation designated is brought within the act, in other respects, it cannot be deprived of the right to remove the suit, because there are joined in the suit with such cause of action against the corporation, other and additional causes of action against the corporation, which are not for a liability, or alleged liability, of the corporation, or causes of action against other defendants, which do not involve a liability, or alleged liability, of the corporation, or of some member thereof, as such member. Of course, the main point upon which the jurisdiction by removal is made by this statute to depend, is the averment, to be made in the petition, provided for afterward, that the corporation, or the member thereof, as such member, has a defence, arising under or by virtue of the constitution of the United States, or some treaty or law of the United States. But, so far as the cause of action which is spoken of in the section is concerned, it is to be a cause of action for a liability, or alleged liability, of the corporation, or of a member thereof, as such member. If such a cause of action against the corporation appears by the papers in the suit, the case is one within the statute, even though other causes of action are joined, which are not for a liability, or alleged liability, of the corporation. Otherwise, the statute might be nullified, at the will of the plaintiff, by joining all kinds of causes of action, no matter how incongruous.

Such being the character of the suit, the next question is, as to who can institute proceedings for the removal of the suit. This may be done by the corporation, or by any member of it. Where the member petitions for the removal, he must be a member who was a member when the suit was commenced in the state court. The ownership of stock in a corporation is necessary to membership, within the meaning of this statute. Subject to these constructions, the initiative to remove the suit may be taken by the corporation, or by any member of it.

The mode of removal prescribed by the act is, that the petition is to be made by the corporation, or by a member thereof, and is to be verified by oath, and is to be presented to the court in which the suit is commenced, and is to be so presented, either before or after issue is joined, and is to be filed in such court, and is to state the existence of a defence, arising under or by virtue of the constitution of the United States, or a treaty or law of the United States; and the petitioner must offer to such court good and sufficient surety for entering in the federal court, on the first

day of its session, copies of all the proceedings in the suit, and doing such other appropriate acts as are required to be done by the act of July 27, 1866, such as, appearing in the federal court, and, if necessary, entering special bail in such court in the cause. The act of 1868 then says: "And it shall be, thereupon, the duty of the court to accept the surety, and proceed no further in the suit; and the said copies being entered, as aforesaid, in such court of the United States, the suit shall then proceed in the same manner as if it had been brought there by original process."

In regard to all the acts for the removal of causes, the acts of 1789, 1833, 1863, 1866, 1867, and 1868, the same principle applies, in this particular—that the right to remove is a right which is conferred upon the party directly by the act of congress, and depends in no manner upon the volition, or action, or non-action, of the state court. If this were not so, the statutes would be mere waste paper. Under these acts, where surety is required to be given, the party is required to offer to the state court good and sufficient surety, and the state court is required, if the surety is good and sufficient, to accept it, and to proceed no further in the suit. The state court cannot defeat the right of removal, by refusing to act upon the question at all, or by refusing to accept the surety, unless it puts the refusal to allow the case to be removed, on the ground that the surety is insufficient. Undoubtedly, there is a discretion, a legal discretion, to be exercised by the state court, in respect to the sufficiency of the surety. But it was held by the supreme court, in the case of Kanouse v. Martin, 15 How. [56 U. S.] 198, as a definitive disposition of the question, that the right of removal is conferred on a party by the act of congress, and that, although he is required to take certain proceedings, by filing a petition in the state court and offering proper surety, yet, when he has done so, if the state court thereafter proceeds with the case, the case is coram non judice in the state court, and all its proceedings are utterly void. This is, unquestionably, the proper interpretation of the acts of congress, all of which are alike, so far as any action is to be had in the state court to secure a removal. The intention is to secure a removal on a compliance with the statute, without the exercise of the pleasure or will of the state court, in any manner whatever. While the state court cannot, by refusing an order of removal, prevent a party from effecting the removal, it adds nothing whatever to the right of removal, or to the jurisdiction of this court, to procure an order from the state court, allowing the removal, provided, always, that the provisions of the act of congress are complied with. An order refusing a removal cannot prevent a removal, nor can an order granting a removal promote a removal. Neither order can effect the jurisdiction of this court in any manner whatever. The act of 1833, as before remarked, has special provisions, providing for coming into the federal court, and doing every thing there. But, in all the other acts, from that of 1789 down, the principle is plainly written on the face of all the statutes, that, when the petition is filed, verified by oath, stating the things which the statute requires—be it alienage, or citizenship, or a defence arising under the constitution of the United States, or a treaty or law of the United States, or a trespass committed under authority derived from the president of the United States during the late Rebellion, or inability, from prejudice or local influence, to obtain justice in the state court—and when good and sufficient surety is offered for doing what the statute requires to be done, the right of removal is perfected. From that time, the state court can do nothing further in the suit, but accept the surety. The act of 1868 says: "And it shall be, thereupon, the duty of the court to accept the surety, and proceed no further in the suit." It then adds: "And, the said copies being entered, as aforesaid, in such court of the United States, the suit shall then proceed in the same manner as if it had been brought there by original process." Now, where a defendant, who has a clear case for removal, files his petition in the state court, and offers proper surety, and obtains from that court an order to remove the cause, it becomes thereupon the duty of the state court to proceed no further in the suit. The case is out of the jurisdiction of the state court, but, at the same time, this court cannot proceed in it, until copies of the proceedings in the state court are entered here. But the plaintiff, in such a case, is not at the mercy of the defendant; because, if the case is a proper one for removal, the plaintiff himself can enter the papers in this court, and the case will proceed here. At a certain stage, the case may be considered as being in neither court, because it is on its transit from the one to the other. The state court is inhibited, by the statute, from proceeding in it, while, at the same time, the federal court cannot proceed in it, because the papers are not yet entered there. Therefore, no difficulty can arise from the failure of the defendant to enter the papers in this court. The sole object of requiring the surety is, that good faith may be observed, and that no defendant shall be allowed to avail himself of the privilege of removal, who is not able to furnish good and sufficient surety for coming into the federal court, at the earliest possible day, and submitting himself to the jurisdiction which he has invoked.

Such is my view of this act of 1868. I have referred to the other statutes, on the subject of removal, because the system is one which has been in operation since the

year 1789, and has been acted upon throughout, by congress, on one principle, namely, that the jurisdiction of the federal courts, in cases of removal, shall in no manner depend on what a state court may do, or omit to do.

In the case of Murray v. Patrie, before referred to, a writ of error was issued by this court, under the act of 1863, in pursuance of the provision of that act, that "it shall be competent for either party, within six months after the rendition of a judgment in any such case, by writ of error or other process, to remove the same to the circuit court of the United States of that district in which such judgment shall have been rendered." The words, "writ of error," were used by congress, in that act, in their common law sense; and, when an act of congress says, that it shall be lawful for a party to remove a judgment by writ of error, the expression necessarily implies that the usual course in regard to a writ of error is to be observed. The judgment is to be removed by the writ of error, but it is not removed by the mere issuing of the writ of error. As in the case of all writs of error, there must be a return to the writ of error. In the case referred to, a writ of error was issued by this court, and served upon the clerk of the state court, which was the supreme court of the state of New York. He refused to make a return to the writ, and desired to bring before this court, for decision, the question whether the case was one in which this court had jurisdiction to issue the writ of error, and whether the act of congress was constitutional. For that purpose, an order was made, in the first instance, requiring the clerk of the supreme court of the state of New York, for the county of Greene, in the third judicial district, to show cause why he should not make a return to the writ. The matter was thoroughly argued, and it was on that hearing that Mr. Justice Nelson gave the opinion to which I have referred. As the result of it, he directed that an order should be issued, requiring the clerk of the supreme court of New York to make a return to this court, on the writ of error. The clerk still refused to make the return, and then the question came up, before Mr. Justice Nelson, as to what should be done. On the view that it was necessary that this court should have a return to the writ of error, in order to exercise its jurisdiction in the case, he issued, sitting in this court, a writ of alternative mandamus to the supreme court of the state of New York. I have before me the original writ of alternative mandamus, the allowance of which is signed by him, and bears date on the 16th of October, 1866. That writ was served on the clerk of the supreme court, for the county of Greene, on the 18th of October, 1866. It is addressed to the justices of the supreme court of the state of New York, for the third judicial district, and for the county of Greene, and to the clerk of the county of Greene, and of the supreme court therein, and recites the recovery of the judgment in the supreme court of New York, and that a writ of error has been allowed by this court on the judgment, with a citation and a proper bond, for the removal of the action into this court, to the end that this court may proceed to try and determine the facts and the law therein. It recites, also, that it has been represented to this court, that, after the rendition of the judgment, the state court refused to allow the action to be removed into this court. It then proceeds: "Whereupon, the said circuit court being willing that justice shall be done, you are hereby commanded, that you make due and legal return to said writ, as required by law, and that you do allow said action to be removed and transferred into the said circuit court of the United States for the southern district of New York, and that you do proceed no further in said case, or, in default thereof, that you and each of you make known" to this court, on a day therein named, "why you and each of you have not done the same." The writ is signed by the clerk of this court, and has upon it the impress of the seal of the court, and its allowance by the court, as before mentioned. To that alternative mandamus the return and answer of the justices of the supreme court was made. The return states, that it is made by way of showing cause why a peremptory mandamus should not issue. It recites all the proceedings in the state court, and sets out all the facts of the case which were deemed necessary to raise the legal questions involved, and then concludes as follows: "Wherefore, the said justices and clerk of said supreme court say, that the said circuit court of the United States has not acquired jurisdiction of the said suit, in favor of said Patrie against said Murray and Buckley, and cannot compel a removal of the same by said writ of error, and a new trial of the same in the said circuit court of the United States." To that return there was a demurrer, and a joinder in demurrer, and then this court gave judgment by a judgment record, which sets out the alternative writ, the return, the demurrer, and the joinder in demurrer, and then proceeds as follows: "Whereupon, all and singular the premises being seen by the court now here, and fully understood, and mature deliberation being thereupon had, for that it appears to the said court, now here, that the said answer and return of the said justices and clerk, and the matters therein contained, are not sufficient in law to quash the said alternative writ of mandamus of the said United States and the said relators, whereupon, the said United States and relators pray judgment, and also a writ of peremptory mandamus, to be directed to the said justices and clerk, commanding them as in said alternative writ is specified: Wherefore it is con-

sidered, that a writ of peremptory mandamus do forthwith issue, directed to the said justices and clerk, commanding them, upon pain and peril that shall fall thereon, to remove and transfer into the circuit court of the United States for the southern district of New York, a certain judgment, and the record thereof, now remaining on file in the office of the said clerk, 'describing the judgment particularly,' according to the command of the said former writ of alternative mandamus, and that they do proceed no further in said cause." This judgment record is signed by Mr. Justice Nelson, and also by the clerk of this court, and bears date on the 20th of November, 1866.

The object of that proceeding by mandamus was, to secure a return to the writ of error, on the idea that the jurisdiction of this court, under the act of 1863, on a writ of error, could not be exercised, unless a return was made to the writ of error. The proceeding by mandamus was, therefore, regarded by this court as necessary to the exercise of its jurisdiction. So far as the judgment of this court awards a peremptory mandamus directing the state court to remove and transfer the judgment of the state court, and the record thereof, into the circuit court of the United States, it awards a mandamus to remove the suit by a return to the writ of error. That is the point on which the jurisdiction of this court to issue the writ of mandamus in that case depended; and it by no means follows, because the writ of mandamus was a proper remedy in the case of Murray v. Patrie, that it is at all a necessary or proper remedy in an ordinary case of the removal of a suit before judgment, under the statutes to which I have referred. Under those statutes, a writ of mandamus is not a necessary remedy. The case comes here without any writ of mandamus. A writ of mandamus would be a pure matter of supererogation, in any case of the kind, because the fact that the case comes here without any affirmative action by the state court, and that no affirmative action of the state court is necessary, shows that no mandamus from this court is necessary to enforce any such affirmative action of the state court. The inhibition of the act of congress, that the state court shall proceed no further in the cause, is addressed directly to the state court by the act of congress. As the jurisdiction of this court, under the 14th section of the judiciary act of September 24, 1789 (1 Stat. 81, 82), to issue writs of mandamus, is, as has been determined in numerous cases, by the supreme court of the United States, confined to cases where such writs are necessary to the exercise of the jurisdiction of the court, it follows, that it is not necessary, in any case of the removal of a cause from a state court into this court, except, perhaps, the case of a writ of error under the act of 1863, that this court should issue a mandamus to the state court to remove the case, a mandamus not being necessary to the exercise, by this court, of its jurisdiction over the cause.

I have referred, at some length, to this subject of a mandamus, because there are several cases, in the courts of the United States, which seem to regard a writ of mandamus as an appropriate remedy in a case like the present one. But, in my view, it is never an appropriate remedy for a circuit court of the United States, unless it is a necessary remedy; and it is not a necessary remedy, unless it is necessary to uphold the exercise of the jurisdiction of the court. Although what I have said on this subject is, in one sense, not strictly involved in the question now before the court, yet the general subject of the remedy by mandamus, in a case like the present one, is so connected with the order that is asked for on this motion, that I have found it impossible to come to a satisfactory conclusion without considering the entire question.

The opinion delivered by Mr. Justice Barnard, in the state court, on his refusal to allow this suit to be removed to this court, states clearly the grounds of the refusal. He says: "A liability, or alleged liability, of such corporation, or any member thereof," referred to in the 2d section of the act of 1868, "must, I think, be construed as sole liability, or sole alleged liability. It is very manifest, that congress intended to transfer to the federal courts jurisdiction in cases where a corporation, or a member thereof, created by federal laws, is sought to be made liable by reason of its corporate acts, or by reason of acts of members thereof charged as corporate acts. If this action were of that character, the right to removal could not be well disputed. If the sole object of this action was to compel the company to issue to the plaintiff the certain shares of the company, referred to in the complaint, the company would be entitled to a removal of the same. But an examination of the complaint shows that, in addition to this object, the plaintiff seeks to have set aside, and have declared illegal, certain transactions between the company and the Credit Mobilier of America, as frauds upon the stockholders of the company. Certainly, in this aspect of the case, it is not brought to enforce the liability of the company, but to set aside and annul certain transactions of the company, as ultra vires." He then proceeds to put his refusal to remove the case upon the ground that the action was brought to enforce a joint liability on the part of the company and of other defendants. In other words, he places his refusal on the ground, that there are coupled with a claim made by the plaintiff against the Union Pacific Railroad Company, for an account and payment to him, as a shareholder in the company, of his share in the profits and property of the company, other causes of action, against other parties, which are not for

a liability of the corporation. He then says, in respect to the verification of the petition for removal, by the treasurer of the company, on its behalf, and by the petitioners Macy and Cisco, for themselves: "The petition and verification thereof as to the Union Pacific Railroad Company are regular. The same may be said as to the defendants Macy and Cisco." Nothing is said, in the opinion, upon the question of surety. The surety is not criticised in any way, as being insufficient. The whole case is put upon the construction of the statute. As to that, as I have already stated, I cannot concur with Mr. Justice Barnard. One other fundamental idea, I perceive, runs through his opinion, which is, that if the case comes into this court as to the company, and as to Macy, and as to Cisco, the case, as to the remainder of the defendants, will be left in the state court, which is, nevertheless, commanded, by the act, to proceed no further in the suit. As to that point, also, as I have already stated, I do not concur in the opinion of Mr. Justice Barnard.

It appears by the papers entered in this court, in the cause, by the defendants, that the petition for removal was originally presented to Mr. Justice Cardozo, of the supreme court, on the 31st of July, 1868. The verifications of the petition by the company, and by Cisco and Macy, bear date on the 30th of July. The petition, in all respects, fully complies with the requirements of the act of 1868, so far as the company and Macy and Cisco are concerned, and states, in the body of it, that the petitioners "hereby offer good and sufficient surety, for entering in said circuit court of the United States for the southern district of New York, on the first day of its session, copies of all process, pleadings, depositions, testimony, and other proceedings in said suit," &c. Appended to the petition, as entered in this court, is a bond to the plaintiff, in the penalty of $10,000, reciting the suit and the petition for removal, and conditioned as required by the act of 1868. There are two sureties to it, each of whom justifies in the amount of its penalty, and it is acknowledged by the sureties. The bond, affidavits, and acknowledgment bear date on the 31st of July, 1868. On that day, Mr. Justice Cardozo, on the summons and complaint in the state court, and the petition, made an order requiring the plaintiff to show cause, on the first Monday of August following, why the petition should not then be filed and the prayer thereof be granted, the prayer being, that the suit be removed to this court, and that the said surety be accepted by the state court, and that the state court proceed no further in the suit. The petition for removal must have been presented to the state court on or before the 6th of August, 1868, because, among the papers entered in this court, in the cause, is an order, entitled in the suit, made by the

supreme court, at a special term held on that day by Mr. Justice Barnard, reciting, that a motion had been made in this action, on due notice, based on the petition of the company for the removal of the cause to this court, under and by virtue of the provisions of the acts of congress in such case made and provided, and that time to file papers in opposition to the motion had been given to the plaintiff, on his application, until the third Monday of August. Some time seems to have been occupied in taking testimony before a referee, to be used on the motion to remove the cause, and it does not appear at what time the motion was finally submitted to the judgment of the court. An affidavit made for, and used on, the motion, states, that the petitioning defendants presented the petition to the state court on the 3d day of August, 1868, "and then and thereupon offered in and to said supreme court good and sufficient surety, in pursuance of said acts of congress." The opinion of Mr. Justice Barnard, deciding the motion for removal, was filed on the 4th of March, 1869. The formal order of the state court on the decision, is dated March 10th, 1869. It makes no reference whatever to the fact that any surety had been offered to the state court. It refers merely to the summons, the complaint, the petition for removal, and sundry affidavits used on the motion for removal, and orders that the prayer of the petition be denied. The copy of the petition and the copy of the bond, which are entered in this court, each of them bears an endorsement that it was filed March 13th, 1869. No other conclusion can be drawn from these facts, than that the bond, as surety, was offered to the state court while the petition was pending before it; and no point is made, in the opinion of Mr. Justice Barnard, as to that fact, or as to the sufficiency of the surety. The petition being, as to its contents, in strict accordance with the act of congress, and being under the seal of the company, with an affidavit of its secretary that such seal is its seal, and was set thereto by him by its authority, and being signed by the treasurer of the company, and being, as Mr. Justice Barnard states in his opinion, verified as to the company, in the form authorized by the state practice, and the allegation in it being, as Mr. Justice Barnard also states, positive and not upon information and belief, a proper case for removal was made out. Under the act of 1868, the petition for removal may be made by the company, or by any one member thereof. The petition in this case was made by the company, and it was also made by Cisco, a member thereof, and by Macy, a member thereof. It shows a suit pending against the corporation, for an alleged liability, within the statute; and it is of no consequence that other causes of action are joined with that

cause of action. The complaint in the state court sets forth, that the plaintiff is the owner and holder of six shares of the capital stock of the defendants, the Union Pacific Railroad Company; that the same stand in his name on the books of the company; that he claims to be entitled, as against the company, by subscription, to twenty thousand other shares of its capital stock; and that the directors of the company deny his right thereto, and refuse to give him certificates therefor. He demands judgment, that he may be declared to be a stockholder of the company, in respect to the twenty thousand shares, and to be entitled to an account of all the rights, property, and franchises of the company, at the time he subscribed for the twenty thousand shares, and to be allowed his just proportion thereof; and that, until his rights are fully admitted, and the said accounting be had, and payment be made to him of all to which he may be entitled, the company be restrained, by injunction, from declaring, making, or paying, any dividend or division of any money or property among its stockholders, or any of them. In addition to this claim for a liability of the company, and this prayer for relief against the company, the complaint makes sundry allegations of fact, in reference to other defendants, on which it prays that those of the defendants who are directors, officers, and stockholders of the company, and have participated in the profits of the defendants the Credit Mobilier of America, be declared to be trustees thereof for the company and its stockholders, and held to account for the same; that the company be enjoined from delivering to the Credit Mobilier, and the Credit Mobilier from receiving, any bonds of the United States, or any grants of lands from the United States, or any bonds of the company issued under certain acts of congress; that all contracts made between the company and the Credit Mobilier, and between the company and the defendant Oakes Ames, be declared fraudulent, and be set aside; that the Credit Mobilier return to the company all property, or the proceeds thereof, received at any time by the Credit Mobilier from the company, or under any contract or transfer made by the company; and that the Credit Mobilier be enjoined from dividing any profits, money, or property among its stockholders, until the liabilities of its directors and stockholders to the company and its stockholders shall be, in such action, determined. The petition for removal avers, that the petitioners, who are the company, Cisco, Macy, and three others of the defendants, "have a defence in said suit arising under and by virtue of the constitution of the United States, and the laws of the United States."

I am of opinion, therefore, that a case was made out for removal; that the state court, ipso facto, lost jurisdiction of the case; and that, on the entering of the papers in this court, it can proceed with the suit and with the whole suit. If all the proper papers have not as yet been filed here, the defect can be supplied; but, as far as I am advised, they all have been filed here. The petition for removal must be considered as having been filed in the state court, within the meaning of the act of 1868, when it was presented to the state court with the bond, irrespective of the formal endorsements made on those papers, that they were filed on the 13th of March, 1869; for, otherwise, it would be in the power of the state court to defeat a removal, by making a rule that a petition for removal should never be filed therein, when the state court should refuse to grant its prayer. The act of congress cannot be evaded in that way. It is substantially what South Carolina did, under circumstances which caused the passage of the act of 1833; and New York might do the same. When the proper petition is presented to the state court, with the surety, so that that court acts upon the matter judicially, in any way whatever—and, in this case, such presentation and action took place, as before shown, as early as the 6th of August, 1868—whether the state court accepts the surety or not, unless it puts its refusal upon some valid defect in the petition, or some insufficiency in the surety, it loses jurisdiction of the cause eo instanti.

It was urged, on the motion, that there is, in fact, no defence in this case, arising under, or by virtue of, the constitution of the United States, or any law of the United States, that the defendants themselves have so declared, and that the papers show the fact. There is a decision of this court on that point, made by Mr. Justice Nelson, in the case of Dennistoun v. Draper [Case No. 3,804], to which I have already referred. It was a case of a suit removed from a state court into this court, under the act of 1833. That act requires that, in the petition to this court, the nature of the suit shall be set forth. A motion was made to this court to remand the suit back to the state court. The defendant, in his petition for removal, set forth that he was an officer, acting under the revenue laws of the United States, namely, a cotton agent at the city of New York, appointed by the secretary of the treasury, in pursuance of law, and that he was in possession of the cotton involved in the suit, and which was a replevin suit for the cotton, and held it as captured and abandoned property, under certain statutes of the United States. The motion to remand was founded on the ground that the defendant did not hold the cotton, at the time the replevin suit sought to be removed was brought, as an officer of the revenue laws, or as a person authorized to hold the cotton under such laws, but held it wrongfully, and in violation of the rights of the plaintiffs in it, and was simply a tortfeasor. Upon that point, Mr. Justice Nelson says: "If

the petition and affidavit, with the certificate of counsel, failed to bring the cause within the act of congress providing for the removal, it would be the duty of the court, on motion, to remand it; and such order has, also, not unfrequently been entered in cases where it appeared clearly, by the admission of the parties or otherwise, that they were not within the act of removal. But, in cases where the proceedings are in conformity with the act, the removal is imperative, both upon the state and the circuit court; and, if the facts are seriously contested, it must be done in a formal manner, by pleadings and proofs, in the latter court. The question of jurisdiction belongs to the federal courts, and must be heard and determined there. The statute is peremptory, that 'the cause shall thereupon be entered on the docket of said court, and shall be thereafter proceeded in as a cause originally commenced in that court,' and 'shall be deemed and taken to be moved to the said circuit court, and any further proceedings, trial, or judgment therein in the state court, shall be wholly null and void.' It is true, that the plaintiff, after the removal of the cause into the circuit court, has no means, according to the course of proceeding in that court, to raise the question of jurisdiction upon the pleadings; and such disability, doubtless, furnishes some plausibility of reason for the hearing of the question upon motion. But this mode of presenting it, which must be upon affidavits, oftentimes conflicting and irreconcilable, is most unsatisfactory, and should not be entertained unless from unavoidable necessity, with a view to ascertain the appropriate tribunal to hear and determine the cause. I am of opinion that no such necessity exists." He then proceeds to show that the plaintiff can avail himself of the objection to the jurisdiction at any stage of the trial, and that if, when the evidence is closed, it shall appear that the cause is such as not to come within the cognizance of the court, under the act, it will be its duty to instruct the jury that the court has no jurisdiction of the case, and to remand it back to the state court. He further says: "The cause, therefore, in question, was properly instituted in the state court, leaving the only question for consideration, on this motion, as to the legal effect of the removal; and, as to that, I am of opinion, inasmuch as the act of congress has been fully complied with, it is not proper, if it be competent, for this court to determine, upon motion, the disputed jurisdictional facts, involving the right or legality of the removal; and that, inasmuch as the question of jurisdiction involving them cannot be raised upon the pleadings, the proper place to hear and determine them is on the trial, where the plaintiffs will be at liberty to take advantage of the objection." The same view was taken by the supreme court in Mayor v. Cooper, 6 Wall. [73 U. S.] 247, 254. As the

defendants, the company, Cisco and Macy, have complied strictly with the act of 1868, by setting out, in their petition, that they have a defence in the suit, arising under the constitution of the United States and the laws of the United States, that averment must be accepted as true, until it is disposed of on the trial of the case. It cannot be inquired into on the present motion, or even on a motion to remand the cause to the state court.

My conclusion, therefore, is, that the whole of this cause is in this court, as respects all the parties to it and all the subject matter involved in it; and that no part of it is now in the state court. Any proceedings which are going on in the suit in the state court are void. Whether, as is alleged in an affidavit used on this motion, such proceedings are going on, or whether, as is claimed on the part of the plaintiff, whatever proceedings, connected with the suit, are now going on in the state court, are not proceedings in the suit, are not questions now presented.

As this court has jurisdiction of this suit, the next question is, whether the relief asked for by this motion shall be granted. The propriety of the action of this court, either directly upon a state court, or upon a party to a suit pending in this court, has been discussed in various cases arising under the laws of the United States, in the courts of the United States. Under the 14th section of the judiciary act, before referred to, which provides that the courts of the United States shall have power to issue all writs which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law, and in view of the general principles of jurisprudence, this court undoubtedly has power, with a view to the efficient exercise of its jurisdiction in this case, to resort to all means that are proper to enforce its jurisdiction. I refer, on this subject, to the case of Board of Com'rs of Knox Co. v. Aspinwall, 24 How. [65 U. S.] 376, and to the case of Riggs v. Johnson Co., 6 Wall. [73 U. S.] 166. In the case last cited, a state court in Iowa has issued an injunction to restrain the levying of a tax to pay a judgment recovered by one Riggs, in the circuit court of the United States for Iowa, against Johnson county, in Iowa, on certain bonds issued by that county. After the injunction had been issued, Riggs, by petition, applied to the said circuit court for a mandamus to the parties enjoined, who were officers of the state, to compel the levying of a tax sufficient to pay the amount of the judgment. In opposition to the application, the issuing of the injunction by the state court was set up. Riggs demurred to such answer, assigning, as cause of demurrer, in substance, that, after the rendering of the judgment by the circuit court, the state court had no jurisdiction to prevent him from using the process of the circuit court, by writ

of mandamus, to collect his judgment. The circuit court overruled the demurrer and Riggs carried the case, by writ of error, to the supreme court. That court reversed the judgment and sustained the demurrer. It held, that the issuing of the mandamus by the circuit court, was to be regarded as a proceeding necessary to the exercise of the jurisdiction of the circuit court; that a circuit court of the United States can issue a writ of mandamus, in all cases where it may be necessary, agreeably to the principles and usages of law, to the exercise of its jurisdiction; and that it can issue such a writ to an officer of a state. To the same effect are the cases of U. S. v. Council of Keokuk, 6 Wall. [73 U. S.] 514, 518. The principle of those cases is, that this court has power to issue a writ of mandamus, and to do any other act of a kindred character, when necessary to the exercise of its jurisdiction. These cases are all based upon the early case of McIntire v. Wood, 7 Cranch [11 U. S.] 504, which holds that the power of the circuit courts of the United States to issue the writ of mandamus, while it exists in cases where the issuing of the writ is necessary to the exercise of its jurisdiction, is confined exclusively to such cases. In the opinion of the court in that case, delivered by Mr. Justice Johnson, the following language is used: "We are of opinion, that the power of the circuit courts to issue the writ of mandamus, is confined exclusively to those cases in which it may be necessary to the exercise of their jurisdiction. Had the 11th section of the judiciary act covered the whole ground of the constitution, there would be much reason for exercising this power in many cases wherein some ministerial act is necessary to the completion of an individual right, arising under laws of the United States, and the 14th section of the same act would sanction the issuing of the writ for such a purpose. But, although the judicial power of the United States extends to cases arising under the laws of the United States, the legislature have not thought proper to delegate the exercise of that power to its circuit courts, except in certain specified cases. When questions arise under those laws in the state courts, and the party who claims a right or privilege under them is unsuccessful, an appeal is given to the supreme court, and this provision the legislature has thought sufficient at present for all the political purposes intended to be answered by the clause of the constitution which relates to the subject." The case just cited is the one upon which, under the 14th section of the judiciary act of 1789, it has been regarded as settled, that the remedy by a writ of mandamus from a circuit court of the United States, is to be invoked only where it is necessary to the exercise of the jurisdiction of the court. Upon this subject, the remarks of Mr. Justice Woodbury, a very discreet and experienced judge, long in public life, in the case of Ladd v. Tudor [Case No. 7,975], are exceedingly apposite. An application was made to the circuit court of the United States for the district of Massachusetts, to issue a mandamus to a state court, to remove a cause therefrom, under the act of 1789, where the plaintiff was a citizen of Massachusetts and the defendant was a citizen of New Hampshire, and where the state court had refused to remove the cause. Mr. Justice Woodbury, in his opinion, says: "It may not be improper to add a few remarks more as to the use of this particular remedy in a case like this. Some doubt might exist, whether a mandamus to a state court from this tribunal, organized under another government, was the proper remedy." He then cites the case, which has been referred to on this motion, of Spraggins v. County Court of Humphries, Cooke, 260, and says that that case seems to countenance the application before him. He also cites the case of Brown v. Crippin, 4 Hen. & M. 173, and says, that, "although the marginal note of that case says that a mandamus would lie from the circuit court, no such opinion was there given; that it is only suggested whether a writ of certiorari might not lie from the circuit court; and that the counsel strenuously contended that no mandamus would lie from the circuit court, and that the latter had no jurisdiction over the case till it actually came there." He then refers to the case of McIntire v. Wood, 7 Cranch [11 U. S.] 504, and says, that, although that case speaks generally of the power of the circuit court to issue a mandamus, in order to sustain its jurisdiction, and although the decision in the case in Cooke rests on the power of superior courts to enforce their jurisdiction over inferior ones by mandamus, yet it is very questionable whether a case like the one then before him ought to be considered within that principle. He adds: "It is a correct principle between inferior and superior courts of the same government, but difficult to be upheld between courts established by separate governments. If necessary to decide on this, it might require more grave consideration, before sustaining it in cases like this, because, being a mode of redress very likely to lead to jealousies and collisions between the states and general government, of a character any thing but desirable."

It is apparent, therefore, that this one idea runs through all the cases—that the remedy by mandamus will not be exercised by the courts of the United States, except where it is necessary to their jurisdiction. On this principle, in a case of removal like the present, no mandamus is necessary to the exercise of the jurisdiction of this court. This principle, embodied in the 14th section of the judiciary act of 1789, is carried, in spirit, into the 5th section of the act of March 2, 1793 (1 Stat. 334, 335), which provides that no writ of injunction shall be granted by a court of the United States, "to stay pro-

ceedings in any court of a state." This provision was intended by congress to prevent conflicts between the state courts and the federal courts, in cases where such conflicts were not absolutely necessary. Where a case goes up to the supreme court, from a state court, under the 25th section of the judiciary act of 1789, and it is necessary to the exercise of the jurisdiction of the supreme court, that it should issue any particular process, of course it will issue it; and so this court, where it is necessary to issue any process, will do so. It issued a mandamus in the case of Murray v. Patrie [Case No. 9,967], because the issue of the writ was regarded as necessary to the exercise of the jurisdiction of this court, with a view to secure a return to the writ of error.

In analogy to this principle, I do not regard it as proper to grant the order asked for in this case. Such an order is not necessary to the exercise of the jurisdiction of this court. On the general principles of comity, irrespective of the act of 1793, if this case is a case which the state court regards as still remaining in that court, and this court shall issue an order restraining the plaintiff, under pains and penalties, from proceeding in the suit in the state court, the state court may grant an order to restrain the defendants, under pains and penalties, from proceeding in the suit in this court. While the issuing of no process appropriate to a suit and necessary to properly maintain the jurisdiction of this court, will ever be intermitted by this court, this court will always sedulously abstain from inviting any of those conflicts which have a tendency to arise, under our mixed system of government, between the federal and the state courts. We have proceeded for eighty years with very few of such judicial conflicts, and, with discretion, they may generally be avoided. Entirely irrespective, therefore, of the act of 1793, my judgment is against the propriety of granting the order asked for.

But there is a further ground which seems to me conclusive against the motion. If this cause is, in fact, in the state court, this court is absolutely prohibited, by the act of 1793, from staying the proceedings in the state court. If this cause is not in the state court, every thing that is going on there, in the way of proceedings in the suit, is an utter nullity and it is, certainly, not becoming for this court to stay proceedings which this court declares to be null and void. It would hesitate long before it would stay void proceedings in a state court. The state court, it is to be assumed, regards the proceedings now going on in this court, in this suit, as null and void; but it is not to be assumed that the state court would undertake to restrain the defendants from carrying on such null and void proceedings. It has not done any thing of the kind as yet, and it would, doubtless, regard such a proceeding as outside of its proper province. So far as appears to this court, the action of the state court, in this matter, has been entirely unexceptionable, as respects this court, or any action of this court. The point upon which Mr. Justice Barnard placed his decision in the state court, in this case, is one upon which I am clearly of opinion that he was wrong; but it is a question as to the construction of a statute, on which judges and courts often differ in opinion.

Irrespective of the views already presented, if this suit is an existing proceeding in the state court, this court is inhibited, by the 5th section of the act of March 2, 1793, from granting an injunction to stay such proceeding. The statute uses, indeed, the words, "a writ of injunction;" but the spirit of it is, that this court shall not in any manner stay a proceeding in a court of a state. It is not an inhibition merely against issuing an injunction in the shape of a writ injunction, mandamus, or prohibition, directed to the state court itself, but it has been construed always as an inhibition against staying a party from conducting such proceedings in a state court. Such was the view of this court in the case of City Bank of New York v. Skelton [Case No. 2,739], where this court was asked to stay a defendant from taking further proceedings in a suit which he had brought in a state court. This court says: "There is an impediment to the enforcement of that principle by this court in the case now before it. One of the suits pending, against which the plaintiffs ask relief, is prosecuted in the state court of chancery, and this court is clothed with no power to restrain or interfere with a suit so situated. A court of the United States, in executing a jurisdiction vested in it, may undoubtedly act upon parties who are suitors in a state court in relation to the same sub ject-matter, so far, at least, as to compel their submission to such judgment as the United States court may render in a case of which it has cognizance. But, even then, it cannot interdict their prosecuting their suit in a state court, much less control any action pending in such court. It is understood that the state courts uniformly adopt the same doctrine in respect to courts of the United States." In the order made in that case, this court declared, that the proceedings in the state court were not within the cognizance of this court, or subject to its control, and, therefore, it issued an injunction merely restraining the defendant from further prosecuting suits brought by him in this court, until the suit in the state court should be decided.

It results, from these views, that, although this suit has been properly removed to this court, and is now pending here, it is not a proper exercise of the judicial power of this court to grant the order asked for. The motion is, therefore, denied.