# MILLIGAN v. LALANCE AND GROSJEAN MANUFACT-
# URING CO.

*(U. S. Circuit Court, Southern District of New York, July 17, 1883.)*

REMOVAL OF CAUSE—PENDING MOTION—RE-SETTLEMENT OF ORDER OF AFFIRMANCE ON APPEAL.    On the removal of a cause from a State Court to the Circuit, this Court may dispose of a motion pending before a general term of the State Court, at the time of removal, for a re-settlement of the form of an order on affirmance, and insert such reasonable provisions in the order of affirmance as it would have been competent and proper for the general term to have done had not the cause been removed.

BROWN, J.

This was an action at law, brought in the State Court of Common Pleas, to recover damages upon an alleged breach of contract by the defendant in not paying certain royalties which the plaintiff alleges the defendant agreed to pay him upon all metal vessels, for culinary purposes, manufactured and sold by it under certain letters patent issued on an improvement invented by the plaintiff.    The defendant denies any such contract, and any obligation to pay any royalty.    A summons, without complaint, having been served on the defendant on September 14, 1882, the plaintiff applied to the Court of Common Pleas, on petition for an inspection of defendant's books of account from 1877 to 1882, for the sole alleged purpose of enabling him to state in his complaint how many of such vessels defendant had sold; *i. e.,* in order to fix the amount of damages to be claimed in his complaint.    By section 803 of the Code, and rule 16 of the State Courts, an inspection, or delivery of sworn copies of the books may in proper cases be ordered.    The special term made an alternative order for an inspection, unless a stipulation were given by the defendant to produce the books on a reference to be ordered after the trial and determination of the main question in dispute, as to the defendant's liability to pay any royalty, and its rate, if on the trial that question were determined against the defendant.    The order gave the defendant no alternative to furnish sworn copies of the books. On appeal to the general term the order was affirmed, after striking out the alternative in reference to the stipulation.    A further appeal to the Court of Appeals was dismissed for want

of jurisdiction, the order being held discretionary in the Court below. Thereupon the defendant applied to the general term of the Common Pleas, upon an order returnable before it, granted April 16th, 1883, by the Chief Judge, to show cause why the order of affirmance should not be modified by allowing an alternative delivery of sworn copies. On the return day the submission of the matter was postponed by order of the general term, and before the adjourned day the cause was properly removed to this Court.

When a case is removed here from a State Court, all prior orders stand as adjudications in the cause. This Court does not sit as an Appellate Court upon such orders, and no further hearings can be had on such matters except as the ordinary practice of this Court may warrant. *Duncan* v. *Gegan*, 101 U. S., 810; *Fisk* v. *Union Pac. R. Co.*, 6 Blatchf., 362; *Brooks* v. *Farwell*, 4 Fed. Rep., 166; *Harrison*, etc., v. *Wheeler*, 11 Fed. Rep., 206; *Werthein* v. *Cont. R. & T. Co.*, *Id.*, 689.

The merits of the original application, therefore, cannot be here reviewed; and if this motion was in the nature of an appeal, or even of a motion for rehearing or re-argument, as the plaintiff contends, it must have been denied. But it cannot be so considered. At the time the cause was removed a motion for the modification of the order had been entertained by the general term, and was then pending and unheard. That application must be disposed of by this Court. It is brought before it by means of this motion, and in disposing of it this Court must necessarily act as the general term, and may and should make any proper order consistent with the prior general term decision which, upon that motion, it was competent for the general term to make. That motion, as I view it, was in effect only a motion for a re-settlement of the form of the order of affirmance; not for a re-arguement of the appeal, or of any question presented upon the appeal. The appeal was from the whole order, on the ground that no case for such an order was made in the petition. In settling, or in re-settling, the form of the order of affirmance, it was competent for the general term to insert any reasonable provisions having reference to the circumstances of the case. If this Court should not entertain and dispose of pending motions when a cause was re-

moved, such as for the re-settlement of the forms of orders, great injustice might at times arise, and an open door be presented for great abuses, through the sudden removal of causes at a particular juncture. The form of order now asked for is that made at special term, with a slight modification, to which there can be no responsible objection, or the delivery of sworn copies, as the rule itself allows.

The motion should, therefore, be granted.

*Robertsons, Harmon & Cuppia*, for plaintiff.

*A. N. Weller* and *Abram Wakeman*, for defendant.

---

## CHIEF JUSTICE COLERIDGE.

At the reception tendered to Chief Justice Coleridge, at St. Louis, the learned jurist, after a few preliminary remarks, spoke as follows:

"I cannot express adequately how much I sympathize and agree with you—that law grows, that while its principles remain unchanged, the application of them must change with changing times; that the English common law is broad as the race, as diverse and elastic as the various peoples of which that race is composed, and that its wisdom and profundity are as inexhaustible as our language. These things I have earnestly believed, am convinced of, and, according to my power, have from time to time, sought to maintain in argument and exemplify in practice.

"But, gentlemen, our common law has had great dangers. The wise and broad liberality of Lord Holt and of Lord Mansfield would have antedated many of those salutary changes now embodied in the law, had it not been for the narrow and unbending learning of Lord Kenyon and Lord Eldon, which postponed them for nearly a century, and in the same way the broad and manly sense of the judges of the Queen's Bench and the Common Pleas, in the times of Lord Denman and Lord Campbell, were overthrown and carped at by a great lawyer, indeed, but a man of the most narrow technicality, who, when I was young, dominated Westminster with the most absolute and despotic sway. I mean Baron Parke, afterward known as Lord Windsordale. He was a man who used to rejoice in non-